# **<u>EXHIBIT A</u>**

ASSET PURCHASE AGREEMENT

by and between

George L. Miller, solely as chapter 7 trustee of the
BANKRUPTCY ESTATE OF PERVACIO, INC.,

and

PARTNERS FOR GROWTH V, L.P. or its assignee, as Buyer

Dated as of November 2, 2020

_____

## ASSET PURCHASE AGREEMENT

THIS ASSET PURCHASE AGREEMENT (this "Agreement"), dated as of November 2, 2020, is made by and between GEORGE L. MILLER, solely as chapter 7 trustee of the bankruptcy estate of PERVACIO, INC., Debtor under Case No. 20-12096 (JTD) (the "Seller" or "Trustee"), and PARTNERS FOR GROWTH V, L.P., a Delaware limited partnership, or its assignee ("Buyer").  Capitalized terms used in this Agreement are defined or cross-referenced in Article 10.

### *BACKGROUND INFORMATION*

A.      PERVACIO, INC. (the "Debtor") commenced a voluntary bankruptcy case under chapter 7 of title of the United States Code, 11 U.S.C. §§ 101-1532 (the "Bankruptcy Code"), in the United States Bankruptcy Court for the District of Delaware (the "Bankruptcy Court") on September 9, 2020 (the "Petition Date").  Thereafter, the Trustee was appointed as the chapter 7 trustee of the Debtor's bankruptcy estate.

B.      Prior to the Petition Date, the Debtor operated a web-based mobile device management platform offering services to manage mobile phones and handheld devices (the "Platform").  More specifically, the Debtor provided reverse logistics services for cell phone carriers and for the OEMs.  Millions of phones are returned to retailers, carriers and OEMs every year, many within only a few days of purchase.  The retailer, carrier or OEM needs to wipe the phone clean of all data and run diagnostics to determine if the phone can go back out as new or if it must be refurbished/fixed and sent into other markets.  The Debtor's Platform performs a data wipe, runs diagnostics, and uploads new software on these returned phones.

C.      Buyer desires to purchase the Acquired Assets (as defined below) from Seller, and Seller desires to sell, convey, assign and transfer to Buyer, the Acquired Assets, all in the manner and subject to the terms and conditions set forth in this Agreement and in accordance with §§ 105 and 363 and other applicable provisions of the Bankruptcy Code.

D.      The Acquired Assets are assets of the Debtor's bankruptcy estate ("Estate"), which are to be purchased and assumed by Buyer pursuant to an order of the Bankruptcy Court approving such sale pursuant to §§ 105, 363 and 365 of the Bankruptcy Code in a form reasonably acceptable to Buyer and Seller (the "Sale Order"), all in the manner and subject to the terms and conditions set forth in this Agreement, the Sale Order, and in accordance with other applicable provisions of the Bankruptcy Code.

E.      The execution and delivery of this Agreement and Seller's ability to consummate the transactions set forth in this Agreement are subject, among other things, to the entry of the Sale Order.

NOW, THEREFORE, in consideration of the foregoing and their respective representations, warranties, covenants and agreements herein contained, and other good and valuable consideration the receipt and sufficiency of which are hereby acknowledged, Seller and Buyer hereby agree as follows:

ARTICLE 1.  <u>PURCHASE AND SALE OF THE ACQUIRED ASSETS.</u>

Section 1.1.    <u>Transfer of Acquired Assets</u>.  At the Closing, and upon the terms and conditions herein set forth, Seller shall sell to Buyer, and Buyer shall acquire from Seller, all of Estate's right, title and interest of every kind and nature whatsoever of Estate, including all Intellectual Property Rights, if any, in and to the assets specifically set forth on **Schedule 1.1(a)** (the "<u>Acquired Assets</u>").  Seller shall make such sale to Buyer free and clear of all liens, claims and encumbrances, except as provided herein below.

Section 1.2.    <u>Excluded Assets</u>.       Any assets owned by the Estate which are not specifically identified on Schedule 1.1(a) as being part of the Acquired Assets are deemed to be "Excluded Assets", including but not limited to (i) cash; (ii) deposits; (iii) insurance; (iv) rights in insurance; (v) to the extent that Buyer does not, on or prior to the date that is 30 days after the Closing Date (or such later date as the parties hereto may agree in writing), provide Seller with written notice of Buyer's intent to acquire the same, the robotics lines and the Intellectual Property Rights associated therewith; (vi) to the extent that Buyer does not, on or prior to the date that is 60 days after the Closing Date (or such later date as the parties hereto may agree in writing), provide Seller with written notice of Buyer's intent to acquire the same, stock in any subsidiary of Debtor; (vii) any license fees or similar charges due under any contract that is not an Assumed Contract pursuant to Bankruptcy Code section 365(n); (viii) avoidance actions; and (ix) other Estate causes of action.

Section 1.3.    <u>Assumed Contracts</u>.  Buyer agrees to assume Seller's obligations arising from and after the Closing Date under the contracts designated by Buyer for assumption and assignment and approved by the Bankruptcy Court for assumption by Seller and assignment to Buyer ("<u>Assumed Contracts</u>").  Attached hereto and incorporated herein as **Schedule 1.3** is a list of Assumed Contracts that Buyer wants Seller to assume and assign to Buyer; provided that until the date that is 16 days after the entry of the Sale Order or determination of the Cure Amount, whichever is later, Buyer may amend such list to add or delete contracts in its sole discretion. The Assumption and Assignment Procedures are detailed in the Bidding Procedures Order [Docket No. 27]. The Cure Amount fixed by the Bankruptcy Court with respect to any Assumed Contract shall be paid by Buyer directly to the counterparty to such contracts promptly after approval of the assumption and assignment.   Further, Buyer shall provide adequate assurance of future performance under the Assumed Contracts, as same is required by the Bankruptcy Court.  In either event, the order approving assumption and assignment shall provide that upon payment of the applicable Cure Amount by the Buyer, such counterparty shall not have any remaining claim against Seller or the Estate related to any default under any such Assumed Contract.  Seller makes no representation or warranty with respect to the future performance of any parties to the Assumed Contracts.  Seller makes no representation or warranty as to whether any Assumed Contracts can be assumed and assigned under applicable law or otherwise.   Buyer acknowledges that the Bankruptcy Court may not approve assumption and assignment of all contracts designated by the Buyer hereunder and agrees to close on the sale notwithstanding such risk.

Section 1.4.    <u>Assumption of Liabilities</u>.  At the Closing, Buyer shall assume, and Buyer hereby agrees to thereafter pay, perform and discharge when due, all liabilities and obligations arising on or after the Closing Date, which relate to or arise from the Acquired Assets and Assumed Contracts (the "Assumed Liabilities"); provided, however, that Buyer shall have no

liability whatsoever or be deemed to have assumed any liabilities or obligations arising prior to the Closing Date and which relate to or arise from Acquired Assets and Assumed Contracts (other than the Cure Amounts) which shall at all times remain the responsibility of the Estate.

## ARTICLE 2.   CONSIDERATION

Section 2.1.    Consideration.  The aggregate consideration (the "Purchase Price") for the sale and transfer of the Acquired Assets and for a full release of all claims of the Estate against the Buyer (which shall be subject to a duly-noticed 9019 compromise motion with Buyer assuming the risk that such motion is not granted) is (i) $1,554,000 US Dollars, plus (ii) an amount (the "Earnout Amount") that is equal to ten percent (10%) of the cash proceeds of accounts receivable to the extent that such proceeds are collected by Buyer on account of services provided by Debtor during September and October of 2020 (any and all such proceeds, the "Applicable Proceeds").  The Purchase Price shall be payable and deliverable in accordance with Section 3.3.

Section 2.2.    Deposit.  Concurrently with the execution and delivery of this Agreement, Buyer shall pay to Seller an amount equal to $10,000 as a deposit (the "Deposit").  If this Agreement is terminated without the Closing occurring, the Deposit shall be disbursed in accordance with Section 8.1(f).  If the Closing occurs, the Deposit shall be applied (without interest) towards the Purchase Price.

Section 2.3.    363 Sale.  The Seller will seek approval and entry of the Sale Order pursuant to the motion filed by Seller under Section 363 of the Bankruptcy Code on September 22, 2020 [Docket No. 12] (the "Sale Motion").

## ARTICLE 3.   CLOSING AND DELIVERIES

Section 3.1.    Closing.  The consummation of the transactions contemplated hereby (the "Closing") shall occur on a date to be determined by Buyer (the "Closing Date"); provided that the Closing Date shall not be (i) earlier than 2 business days after entry of the Sale Order (conditioned upon the Bankruptcy Court making a finding under Fed. R. Bankr. P 6004(h)) electronically, or (ii) later than November 30, 2020; provided further that, in the event Buyer shall not close the transactions contemplated hereby by November 6, 2020, then (x) Buyer shall make the payment required by Section 3.3(a)(ii) no later than November 13, 2020, and (y) Buyer shall additionally deposit with Seller a mutually agreeable amount to fund Seller's administrative expenses (including professional fees) between November 7, 2020 and November 30, 2020 (to be refunded to Buyer to the extent not utilized by the Seller to fund such expenses).

Section 3.2.    Seller's Deliveries.  At the Closing, the sale, transfer, assignment and delivery by Seller to Buyer of the rights, title and interests in and to the Acquired Assets, as herein provided, shall be free and clear of all liens, claims and encumbrances and shall be effected on the Closing Date by bills of sale, endorsements, assignments and other instruments of transfer and conveyance, as well as the electronic transfer of all files and records of Seller relating to the Acquired Assets excluding any representations, warranties or covenants (other than those expressly set forth herein) and shall otherwise be consistent with the terms of this Agreement reasonably satisfactory in form and substance to counsel for Buyer.

Section 3.3.    Buyer's Deliveries.:

(a)    At the Closing, Buyer shall (i) release any interest in the Deposit, (ii) pay to Seller $140,000 in cash, and (iii) pay the remaining $1,404,000 as a reduction in Buyer's secured claim against Debtor; and

(b)    Promptly following Buyer's receipt of any Applicable Proceeds, Buyer shall pay to Seller the applicable Earnout Amount related to such Applicable Proceeds.

ARTICLE 4.   REPRESENTATIONS AND WARRANTIES

Section 4.1.    Representations and Warranties of Seller.   Seller represents and warrants to Buyer as follows:

(a)    Corporate Organization.   Debtor is in a chapter 7 proceeding in the Bankruptcy Court.  Subject to any necessary authority from the Bankruptcy Court, Seller has all requisite power and authority to consummate the transactions contemplated hereby.

(b)    Authorization and Validity.  Seller has all requisite power and authority to enter into this Agreement and, subject to the Bankruptcy Court's entry of the Sale Order, to carry out his obligations hereunder and thereunder.  This Agreement has been duly executed by Seller and, subject to the Bankruptcy Court's entry of the Sale Order, constitutes valid and binding obligations, enforceable against the Estate in accordance with their terms.

(c)    Litigation.  Except as disclosed on the Debtor's Statement of Financial Affairs (SOFA), as may be amended, to the best of Seller's knowledge, the Seller is not aware of any claims, actions, suits, proceedings or investigations pending or threatened concerning the Acquired Assets.

(d)    Disclaimer of other Representations and Warranties.  The Seller makes no representation or warranty, express or implied, at law or in equity, regarding the Acquired Assets (including, without limitation, the Assumed Contracts) or any assets, liabilities or operations, including, without limitation, with respect to capacity, condition, design, fitness for any particular purpose, merchantability, operation or quality, and any such other representations or warranties are hereby expressly disclaimed.  Seller expressly disclaims any representation or warranty, express, statutory, or implied, as to: (i) the content, character, or nature of any descriptive memorandum, report, brochure, chart, or statement relating to the Debtor or the Acquired Assets; (ii) any estimates of the value of the Acquired Assets, or future revenues generated by the Acquired Assets; (iii) the condition, quality, suitability, prior use, or design of the Acquired Assets; (iv) the merchantability or fitness for a particular purpose of the Acquired Assets; (v) the validity, enforceability, restriction-free nature, or transferability of any trademarks, copyrights, patents, domain names, or any other Intellectual Property Rights in the Acquired Assets used by the Debtor in its business, including, but not limited to, any software used in the business; (vi) the rights any licensee may have under 11 U.S.C. § 365(n); or (vii) any other materials or information that may have been made available or communicated to Buyer or its Affiliates, or their employees, agents, consultants, representatives, or advisors in connection with the transactions contemplated by this Agreement or any discussion or presentation relating thereto.   BUYER HEREBY ACKNOWLEDGES AND AGREES THAT SELLER MAKES NO REPRESENTATION OR WARRANTY, AND SPECIFICALLY DISCLAIMS ANY AND ALL IMPLIED

REPRESENTATIONS AND WARRANTIES, WITH RESPECT TO THE INTELLECTUAL PROPERTY RIGHTS IN THE ACQUIRED ASSETS INCLUDING, BUT NOT LIMITED TO, ANY WARRANTY THAT USE OF THE ACQUIRED ASSETS WILL NOT INFRINGE UPON, VIOLATE OR MISAPPROPRIATE ANY PATENT, COPYRIGHT, TRADEMARK, TRADE SECRET, OR OTHER INTELLECTUAL PROPERTY OR PROPRIETARY RIGHTS OF A THIRD PARTY.  BUYER HEREBY ACKNOWLEDGES AND AGREES THAT BUYER IS PURCHASING THE ACQUIRED ASSETS ON AN "AS-IS, WHERE-IS" BASIS AND "WITH ALL FAULTS."  WITHOUT LIMITING THE GENERALITY OF THE FOREGOING, THE SELLER MAKES NO REPRESENTATION OR WARRANTY REGARDING ANY ASSETS OTHER THAN THE ACQUIRED ASSETS, AND NONE SHALL BE IMPLIED AT LAW OR IN EQUITY.

Section 4.2.    <u>Representations and Warranties of Buyer</u>.  Buyer hereby represents and warrants to Seller as follows:

(a)    <u>Corporate Organization</u>.  Buyer is a limited partnership duly formed, validly existing and in good standing under the laws of Delaware and has all requisite limited partnership power and authority to own its properties and assets.

(b)    <u>Authorization and Validity of Agreement</u>.  Buyer has all requisite limited partnership power and authority to enter into this Agreement and to carry out its obligations hereunder.  The execution and delivery of this Agreement and the performance of Buyer's obligations hereunder have been duly authorized by all necessary limited partnership action by the board of directors (or equivalent) of Buyer, and no other limited partnership action on the part of Buyer is necessary to authorize such execution, delivery and performance.  This Agreement has been or will be duly executed by Buyer and constitutes, or will when executed constitute, its valid and binding obligation, enforceable against it in accordance with its terms.

(c)    <u>No Conflict or Violation</u>.  The execution, delivery and performance by Buyer of this Agreement does not and will not violate or conflict with any provision of the certificate of incorporation or by-laws (or equivalent documents) of Buyer and does not and will not violate any provision of law, or any order applicable to Buyer, nor will it result in a breach of or constitute (with due notice or lapse of time or both) a default under any contract to which Buyer is a party or by which it is bound or to which any of its properties or assets is subject.

(d)    <u>Consents and Approvals</u>.  The execution, delivery and performance of this Agreement does not and will not require the consent or approval of, or filing with, any government or any other Person except (i) as may be required to be obtained by Buyer after the Closing in order to own or operate any of the Acquired Assets; (ii) for entry of the Sale Order by the Bankruptcy Court; or (iii) for such consents, approvals and filings, of which the failure to obtain or make would not, effect the ability of Buyer to consummate the transactions contemplated hereby.

(e)    <u>Investigation by Buyer</u>.  Buyer has conducted its own independent review and analysis of the Acquired Assets, the Assumed Liabilities, and the Assumed Contracts.  Buyer has conducted its own independent review of all Orders of, and all motions, pleadings, and other submissions to, the Bankruptcy Court in connection with the Bankruptcy Case.  In entering into this Agreement, Buyer has relied solely upon its own investigation and analysis, and Buyer

(i) acknowledges that neither Seller, nor any of its Affiliates or Related Persons makes or has made any representation or warranty, either express or implied, as to the accuracy or completeness of any of the information provided or made available to Buyer or its Affiliates or Related Persons, except for the representations and warranties contained in <u>Section 4.1</u>; and (ii) agrees, to the fullest extent permitted by law, that none of Seller, its Affiliates or any of their respective Related Persons shall have any liability or responsibility whatsoever to Buyer or its Affiliates or Related Persons on any basis (including, without limitation, in contract or tort, under federal or state securities laws or otherwise) based upon any information provided or made available, or statements made, to Buyer or its Affiliates or Related Persons (or any omissions therefrom), including, without limitation, in respect of the specific representations and warranties of Seller set forth in this Agreement, except, with regard to Seller, for the representations and warranties contained in <u>Section 4.1</u>.

Section 4.3. <u>Warranties Exclusive</u>. The parties acknowledge that the representations and warranties contained in Article 4 are the only representations or warranties given by the parties and that all other express or implied warranties are disclaimed. Without limiting the foregoing Buyer acknowledges that the Acquired Assets are conveyed "AS IS", "WHERE IS" and "WITH ALL FAULTS" and that ALL WARRANTIES OF MERCHANTABILITY OR FITNESS FOR A PARTICULAR PURPOSE ARE DISCLAIMED. WITHOUT LIMITING THE FOREGOING THE BUYER ACKNOWLEDGES THAT SELLER AND SELLER'S AFFILIATES AND THEIR RESPECTIVE RELATED PERSONS HAVE MADE NO REPRESENTATION OR WARRANTY CONCERNING (I) ANY USE TO WHICH THE ACQUIRED ASSETS MAY BE PUT, (II) ANY FUTURE REVENUES, COSTS, EXPENDITURES, CASH FLOW, RESULTS OF OPERATIONS, FINANCIAL CONDITION OR PROSPECTS THAT MAY RESULT FROM THE OWNERSHIP, USE OR SALE OF THE ACQUIRED ASSETS, (III) ANY OF DEBTOR'S PATENTS, INTELLECTUAL PROPERTY RIGHTS IN THE ACQUIRED ASSETS, COPYRIGHTS, TRADE SECRETS, DOMAIN NAMES, TRADEMARKS, OR OTHER INTELLECTUAL PROPERTY OR PROPRIETARY RIGHTS OF DEBTOR, INCLUDING, BUT NOT LIMITED TO, ANY EXISTING IN THE ACQUIRED ASSETS, AND ANY SOFTWARE USED IN THE BUSINESS, (IV) ANY OTHER INFORMATION OR DOCUMENTS MADE AVAILABLE TO BUYER OR ITS AFFILIATES OR RELATED PERSONS OR (V) EXCEPT AS EXPRESSLY SET FORTH IN SECTION 4.1, THE CONDITION OF THE ACQUIRED ASSETS INCLUDING, WITHOUT LIMITATION, COMPLIANCE WITH ANY FEDERAL TRADE COMMISSION LAWS OR OTHER LAWS.

Section 4.4. <u>Survival of Representations and Warranties</u>. None of the representations or warranties of Seller set forth in this Agreement or in any certificate delivered pursuant to <u>Section 7.2(a)</u> shall survive the Closing.

ARTICLE 5. <u>COVENANTS AND OTHER AGREEMENTS.</u>

Section 5.1. <u>Covenants of Seller.</u>

(a) At the request and the sole expense of Buyer, at any time after the Closing Date, Seller shall promptly execute and deliver such documents as Buyer or its counsel may reasonably request to effectuate the purposes of this Agreement.

Section 5.2. <u>Covenants of Buyer</u>.

(a)    At the request and the sole expense of Seller, at any time after the Closing Date, Buyer shall promptly execute and deliver such documents as Seller or its counsel may reasonably request to effectuate the purposes of this Agreement.

Section 5.3.    <u>Bankruptcy Matters</u>.    Seller and Buyer shall use commercially reasonable efforts to cooperate, assist and consult with each other to secure the entry of the Sale Order following the date hereof, and to consummate the transactions contemplated by this Agreement, including furnishing affidavits or other documents or information for filing with the Bankruptcy Court for the purposes, among others, of providing necessary assurances of performance by Buyer under this Agreement and furnishing any testimony regarding the transactions contemplated hereby.

Section 5.4.    <u>Adjustment of Certain Receivables</u>.    Notwithstanding anything to the contrary contained herein, the Parties acknowledge and agree that any revenues or other proceeds or other consideration paid to:

(a)    or received by Seller in connection with the Acquired Assets following the Closing Date that, pursuant to the terms of this Agreement, should have been paid to Purchaser, shall be held in trust for Purchaser and shall be delivered, or paid over, by Seller to Purchaser as promptly as practical, but in no event later than thirty (30) days after receipt of the revenues or other proceeds or consideration for amounts received anytime thereafter;

(b)    or received by Purchaser in connection with the Acquired Assets that, pursuant to the terms of this Agreement, should have been paid to Seller shall be held in trust for Seller and shall be delivered, or paid over, by Purchaser to Seller as promptly as practical, but in no event later than thirty (30) days after receipt of the revenues or other proceeds or consideration for amounts received anytime thereafter.

## ARTICLE 6.   <u>TAXES.</u>

Section 6.1.    <u>Taxes Related to Purchase of Assets</u>.    All federal, state and local sales, transfer, gains, excise, value-added or other similar Taxes, if any, including, without limitation, all state and local Taxes in connection with the transfer of the Acquired Assets, and all recording and filing fees (collectively, "<u>Transaction Taxes</u>"), that may be imposed by reason of the sale, transfer, assignment and delivery of the Acquired Assets shall be paid by Buyer.  Buyer and Seller agree to cooperate to determine the amount of Transaction Taxes payable in connection with the transactions contemplated under this Agreement.  Seller agrees to assist Buyer reasonably in the preparation and filing of any and all required returns for or with respect to such Transaction Taxes with any and all appropriate taxing authorities.

## ARTICLE 7.   <u>CONDITIONS PRECEDENT TO PERFORMANCE BY PARTIES.</u>

Section 7.1.    <u>Conditions Precedent to Performance by Seller</u>.    The obligation of Seller to consummate the transactions contemplated by this Agreement is subject to the fulfillment, at or before the Closing Date, of the following conditions; any one or more of which (other than the condition contained in Section 7.1(c)) may be waived by Seller in its sole discretion:

(a)     <u>Representations and Warranties of Buyer</u>.    All representations and warranties made by Buyer in <u>Section 4.2</u> shall be accurate in all material respects on and as of the Closing Date as if again made by Buyer on and as of such date, except for inaccuracies that do not effect Buyer's ability to perform its obligations hereunder, and Seller shall have received a certificate, dated the Closing Date and signed by the president, or equivalent, of Buyer, to that effect.

(b)     <u>Performance of the Obligations of Buyer</u>.  Buyer shall have performed in all material respects all obligations required under this Agreement to be performed by it on or before the Closing Date.

(c)     <u>Consents and Approvals</u>.  The Bankruptcy Court shall have entered the Sale Order, in form and substance reasonably satisfactory to Seller and Buyer, and no order staying, reversing, modifying or amending the Sale Order shall be in effect on the Closing Date.

(d)     <u>No Violation of Orders</u>.  No preliminary or permanent injunction or other order that declares this Agreement invalid or unenforceable in any respect or which prevents the consummation of the transactions contemplated hereby shall be in effect.

Section 7.2.    <u>Conditions Precedent to the Performance by Buyer</u>.  The obligations of Buyer to consummate the transactions contemplated by this Agreement are subject to the fulfillment, at or before the Closing Date, of the following conditions, any one or more of which (other than the condition contained in <u>Section 7.2(b)</u>) may be waived by Buyer in its sole discretion:

(a)     <u>Consents and Approvals</u>. The Bankruptcy Court shall have entered the Sale Order and no order staying, reversing, modifying or amending the Sale Order shall be in effect on the Closing Date.

(b)     <u>No Violation of Orders</u>.  No preliminary or permanent injunction or other order that declares this Agreement invalid in any respect or prevents the consummation of the transactions contemplated hereby shall be in effect.

## ARTICLE 8.   <u>TERMINATION</u>

Section 8.1.    <u>Termination</u>:  This Agreement may be terminated at any time prior to the Closing Date:

(a)     By either Seller or Buyer if the Closing shall not have occurred by November 30, 2020, due to no fault of either Party; provided, however, that such date may be extended by Seller and Buyer upon mutual agreement.

(b)     By either Seller or Buyer upon the entry of an order of the Bankruptcy Court authorizing the sale of the Acquired Assets in a Competing Transaction.

(c)     By Seller if Buyer shall have breached any of its obligations, representations, warranties, covenants or agreements contained in this Agreement, which breach

cannot be or has not been cured within three (3) Business Days after the giving of written notice by Seller to Buyer specifying such breach.

(d)     By Buyer if Seller shall have breached any of its obligations, representations, warranties, covenants or agreements contained in this Agreement, which breach cannot be or has not been cured within three (3) Business Days after the giving of written notice by Buyer to Seller specifying such breach; or

(e)     By the mutual written consent of Seller and Buyer.

(f)     <u>Effect of Termination</u>.  In the event of termination of this Agreement as provided in Section 8.1, this Agreement shall forthwith become void and there shall be no liability on the part of either party; provided, however, that in the event this Agreement is terminated pursuant to Section 8.1(c) and Seller is not then in breach of Seller's obligations hereunder, then Seller may retain any cash received hereunder as its sole remedy for any damages resulting to the Estate for such breach or failure to perform.  In the event of termination of this Agreement for any reason other than pursuant to Section 8.1(c), and provided that Buyer is not then in breach of Buyer's obligations hereunder, Buyer shall be entitled to return of the Deposit, without any interest thereon.  The return of the Deposit by Seller shall be Buyer's sole remedy in the event of a breach of Sellers' obligation hereunder.

ARTICLE 9.  <u>MISCELLANEOUS.</u>

Section 9.1.     <u>Successors and Assigns</u>.  Except (i) for the assignment by Partners for Growth V, L.P. to an affiliated entity, and (ii) as otherwise provided in this Agreement, no party hereto shall assign this Agreement or any rights or obligations hereunder without the prior written consent of the other party hereto, and any such attempted assignment without such prior written consent shall be void and of no force and effect.  This Agreement shall inure to the benefit of and shall be binding upon the successors and permitted assigns of the parties hereto.

Section 9.2.     <u>Governing Law; Jurisdiction</u>.  This Agreement shall be construed, performed and enforced in accordance with, and governed by, the laws of the United States of America and the State of Delaware (without giving effect to the principles of conflicts of laws thereof), except to the extent that the laws of such State are superseded by the Bankruptcy Code. The parties hereto irrevocably elect as the sole judicial forum for the adjudication of any matters arising under or in connection with the Agreement, and consent to the exclusive jurisdiction of, the Bankruptcy Court and waive any right to a jury trial regarding the same.

Section 9.3.     <u>Expenses</u>.  Except as otherwise provided herein, each of the parties hereto shall pay its own expenses in connection with this Agreement and the transactions contemplated hereby, including, without limitation, any legal and accounting fees, whether or not the transactions contemplated hereby are consummated.  Buyer shall pay any fees, costs, and expenses associated with recording an assignment of any of the Acquired Assets.

Section 9.4.     <u>Broker's and Finder's Fees</u>.  Each of the parties represents and warrants that it has dealt with no broker or finder in connection with any of the transactions contemplated by this Agreement and, insofar as such party knows, no broker or other Person is entitled to any commission or finder's fee in connection with any of these transactions.

Section 9.5.    <u>Severability</u>.  In the event that any part of this Agreement is declared by any court or other judicial or administrative body to be null, void or unenforceable, said provision shall survive to the extent it is not so declared, and all of the other provisions of this Agreement shall remain in full force and effect only if, after excluding the portion deemed to be unenforceable, the remaining terms shall provide for the consummation of the transactions contemplated hereby in substantially the same manner as originally set forth at the later of the date this Agreement was executed or last amended.

Section 9.6.    <u>Notices</u>.

(a)    All notices, requests, demands and other communications under this Agreement shall be in writing and shall be deemed to have been duly given: (i) on the date of service, if served personally or by email on the party to whom notice is to be given; (ii) on the day after delivery to Federal Express or similar overnight courier or the next day Express Mail service maintained by the United States Postal Service; or (iii) on the third day after mailing, if mailed to the party to whom notice is to be given, by first class mail,  certified, postage prepaid and properly addressed, to the party as follows:

If to Seller:

    George L. Miller
    Chapter 7 Trustee
    1628 John F. Kennedy Boulevard
    Suite 950
    Philadelphia, PA 19103
    Email: gmiller@mctllp.com

Additional copy to:

    Archer & Greiner, P.C.
    300 Delaware Avenue, Suite 1100
    Wilmington, DE  19801
    Attention:  David Carickhoff, Esq.
    Email: dcarickhoff@archerlaw.com

If to Buyer:

    Partners for Growth V, L.P.
    1751 Tiburon Blvd.,
    Tiburon, CA 94920
    Attention: Andrew Kahn  and Phil Lawson
    Email: andrew@pfgrowth.com; phil@pfgrowth.com

Additional copy to:

> Levy, Small & Lallas
> 815 Moraga Drive
> Los Angeles, CA 90049-1633
> Attention:  Leo D. Plotkin and Sarah Steigleder
> Email: lplotkin@lsl-la.com*;* ssteigleder@lsl-la.com

(b)    Any party may change its address for the purpose of this <u>Section 9.6</u> by giving the other party written notice of its new address in the manner set forth above.

Section 9.7.    <u>Amendments; Waivers</u>.    This Agreement may be amended or modified, and any of the terms, covenants, representations, warranties or conditions hereof may be waived, only by a written instrument executed by the parties hereto, or in the case of a waiver, by the party waiving compliance.  Any waiver by any party of any condition, or of the breach of any provision, term, covenant, representation or warranty contained in this Agreement, in any one or more instances, shall not be deemed to be or construed as a furthering or continuing waiver of any such condition, or of the breach of any other provision, term, covenant, representation or warranty of this Agreement.

Section 9.8.    <u>Public Announcements</u>.  Except for any description of the Sale in any motion or document filed with the Bankruptcy Court, no party shall make any press release or public announcement concerning the transactions contemplated by this Agreement without the prior written approval of the other Party.  The Parties acknowledge that Seller shall file this Agreement with the Bankruptcy Court in connection with obtaining the Sale Order and may file and serve other related notices regarding this Agreement as Seller deems appropriate.

Section 9.9.    <u>Entire Agreement</u>.    This Agreement contains the entire understanding between the parties hereto with respect to the transactions contemplated hereby and supersede and replace all prior and contemporaneous agreements and understandings, oral or written, with regard to such transactions.  All schedules hereto and any documents and instruments delivered pursuant to any provision hereof are expressly made a part of this Agreement as fully as though completely set forth herein.

Section 9.10.    <u>Parties in Interest</u>.  Nothing in this Agreement is intended to or shall confer any rights or remedies under or by reason of this Agreement on any Persons other than Seller and Buyer and their respective successors and permitted assigns.  Nothing in this Agreement is intended to or shall relieve or discharge the obligations or liability of any third Persons to Seller or Buyer.  This Agreement is not intended to nor shall give any third Persons any right of subrogation or action over or against Seller or Buyer.

Section 9.11.    <u>Headings, Interpretation, Gender</u>.  Words used herein, regardless of the number and gender specifically used, shall be deemed and construed to include any other number, singular or plural, and any other gender, masculine, feminine, or neuter, as the context requires.  Whenever the words "include," "includes" or "including" are used in this Agreement, they shall be deemed followed by the words "without limitation."  Neither this Agreement nor any uncertainty or ambiguity herein shall be construed or resolved against Buyer or Seller, whether under any rule of construction or otherwise.  No party to this Agreement shall be considered the draftsman.  On the contrary, this Agreement has been reviewed, negotiated and accepted by all

parties and their attorneys and shall be construed and interpreted according to the ordinary meaning of the words so as fairly to accomplish the purposes and intentions of all the parties.  The table of contents and the captions and section headings contained in this Agreement are for convenience of reference only, do not form a part of this Agreement and shall not affect in any way the meaning or interpretation of this Agreement.  All references in this Agreement to "Section" or "Article" shall be deemed to be references to a Section or Article of this Agreement.  All references to "herein" or "hereof" or "hereunder" and similar phrases shall be broadly construed to refer to the entire Agreement and not merely to the specific clause, section, or article.

Section 9.12.  <u>Counterparts</u>.  This Agreement may be executed in counterparts, each of which shall be deemed an original, but all of which shall constitute the same instrument. A signed copy of this Agreement delivered by facsimile, e-mail or other means of electronic transmission shall be deemed to have the same legal effect as delivery of an original executed counterpart of this Agreement.

ARTICLE 10.  <u>DEFINITIONS.</u>

Section 10.1.  <u>Certain Terms Defined</u>.  As used in this Agreement, the following terms have the following meanings:

"<u>Affiliate</u>" means, with respect to any Person, any Person directly or indirectly controlling, controlled by or under direct or indirect common control with such other Person.

"<u>Assumed Contracts</u>" has the meaning ascribed to such term in Section 1.3.

"<u>Assumed Liabilities</u>" has the meaning ascribed to such term in Section 1.4.

"<u>Business Day</u>" means any day other than Saturday, Sunday and any day that is a legal holiday or a day on which banking institutions in Wilmington, Delaware are authorized by law or other governmental action to close.

"<u>Cure Amount</u>" shall mean the amount fixed by the Bankruptcy Court as being the amount necessary to cure all defaults under an executory contract or unexpired lease designated by Buyer to become an Assumed Contract.

"<u>Intellectual Property Rights</u>" means any and all intellectual property rights of whatever nature and in whatever form including rights in all  trademarks, service marks, registered designs, domain names, pending applications for any of the foregoing, trade and business names, brand names, unregistered trademarks and service marks, and all goodwill associated with any of the foregoing, inventions, unregistered designs and rights in designs, trade dress, trade secret, formula, copyrights, database rights and rights in software, moral rights, performers rights, know-how, other intellectual property rights subsisting under the laws of each and every jurisdiction throughout the world whether registered or not, and whether vested, contingent or future, and all divisions, continuations, continuations-in-part, substitutes, reversions, renewals and extensions of any of the foregoing, and all rights under permits, laws or otherwise in relation to any of the foregoing, as well as the rights to sue for past, present, and future infringement of any and all such intellectual property rights.

"Person" means any individual, corporation, partnership, joint venture, association, joint-stock company, trust, unincorporated organization or government.

"Related Person" means, with respect to any Person, all past, present and future directors, officers, members, managers, stockholders, employees, controlling persons, agents, professionals, attorneys, accountants, investment bankers or representatives of any such Person.

"Subsidiary(ies)" means, when used with respect to any specified Person, any other Person (i) of which the specified Person or any Subsidiary thereof is a general partner, (ii) of which the specified Person or a Subsidiary thereof own at least a majority of the securities or other interests having by their terms ordinary voting power to elect a majority of the board of directors or others performing similar functions for such other Person of which owns the specified person or a Subsidiary thereof, or (iii) that is directly or indirectly controlled by the specified Person or any Subsidiary thereof.

**[Signatures are on the following page.]**

IN WITNESS WHEREOF, the parties hereto have caused this Agreement to be executed by their respective officers thereunto duly authorized as of the date first above written.

PARTNERS FOR GROWTH V, L.P.

By: _____

Name:   Philip Lawson

Title:     Manager, Partners for Growth V LLC its General Partner

CHAPTER 7 TRUSTEE, Seller

By: _____

Name: George L. Miller

Title: Chapter 7 Trustee of the bankruptcy estate of

Pervacio, Inc.

IN WITNESS WHEREOF, the parties hereto have caused this Agreement to be executed by their respective officers thereunto duly authorized as of the date first above written.

PARTNERS FOR GROWTH V, L.P.

By: _____
Name:
Title:

CHAPTER 7 TRUSTEE, Seller

By: _____
Name: George L. Miller
Title: Chapter 7 Trustee of the bankruptcy estate of Pervacio, Inc.

# Schedule 1.1(a)
# Acquired Assets

All right, title and interest in and to all accounts receivable as of the Petition Date and thereafter.

The Assumed Contracts.

To the extent that, on or prior to the date that is 30 days after the Closing Date (or such later date as the parties hereto may agree in writing), Buyer provides written notice to Seller of Buyer's intent to acquire the same, the robotics lines and the Intellectual Property Rights associated therewith.

All rights under any and all Non-Disclosure Agreements (or their functional equivalents).

All Intellectual Property Rights (other than those associated with the robotics lines), including without limitation, the following:

**Patents:**

| Docket | App. No. | Title | Type | 1st Inventor | Status |
|--------|----------|-------|------|--------------|--------|
| PERVACIO001 | 15/177,970 | MOBILE DEVICE DIAGNOSTICS | Non-Provisional | Sanjay Kanodia | Patented |
| PERVACIO004 | 15/674,445 | TETHERED DEVICE SWITCH WITH WIRELESS CONNECTION | Non-Provisional | Sanjay Kanodia | PENDING |
| PERVACIO007 | 15/885,237 | COSMETIC DEFECT EVALUATION | Non-Provisional | Sanjay Kanodia | PENDING |
| PERVACIO005 | 15/706,381 | AUTOMATED DIAGNOSTICS FOR DEVICE DISPLAY AND CAMERA | Non-Provisional | Smita Madhukar Nirmal | PENDING |
| PERVACIO006 | 15/884,866 | DEVICE AND COMPONENTS OVERHEATING | Non-Provisional | Sanjay Kanodia | PENDING |
| PERVAC008PCT | US19/21848 | LIQUID DAMAGE DETECTION | PCT | Sanjay Kanodia | PENDING |
| PERVACIO009P | 62/721,000 | RESTRICTED SERIAL BUS DISCOVERY | Provisional | Sanjay Kanodia | PENDING |
| PERVACIO010P | 62/734,076 | READY TO USE MOBILE DEVICES | Provisional | Sanjay Kanodia | PENDING |
| PERVACIO010P1 | 62/748,570 | ENTERPRISE READY TO USE MOBILE DEVICES | Provisional | Sanjay Kanodia | PENDING |

| PERVACIO011P | 62/732,916 | VEHICLE AUTOMATIC DEFECT EVALUATION | Provisional | Sanjay Kanodia | PENDING |
|---|---|---|---|---|---|
| PERVACIO012P | 62/758,030 | LCD DEFECT EVALUATION | Provisional | Sanjay Kanodia | PENDING |
| PERVACIO013P | 62/781,886 | DEVICE SETUP ASSISTANCE | Provisional | Sanjay Kanodia | PENDING |
| PERVACIO014P | 62/780,014 | LIQUID DAMAGE INDICATOR CAMERA FIXTURE | Provisional | Ari-Pekka Luoma | PENDING |
| PERVACIO015P | 62/789,679 | CHAMBER IMAGING THROUGH CONSTRICTED PORTAL | Provisional | Ari-Pekka Luoma | PENDING |
| PERVACIO016P | 62/801,761 | DEVICE-TO-DEVICE COSMETIC DEFECT EVALUATION | Provisional | Ari-Pekka Luoma | PENDING |
| PERVACIO017P | 62/789,658 | DEVICE HARDWARE INSPECTION | Provisional | Sanjay Kanodia | PENDING |
| PERVACIO018P | 62/790,359 | AUTOMATIC DEVICE IDENTIFICATION | Provisional | Sanjay Kanodia | PENDING |
| PERVACIO019P | 62/787,896 | DATA VERIFICATION AND FEEDBACK FOR IMPROVING DEEP-LEARNING MODEL | Provisional | Sanjay Kanodia | PENDING |
| PERVACIO020P | 62/801,152 | APPLYING CONFIGURATIONS THROUGH KEYBOARD EMULATION | Provisional | Sanjay Kanodia | PENDING |
| PERVACIO021P | 62/847,983 | CLOUD PAIRING OF MOBILE DEVICES | Provisional | Shamsunder Reddy | PENDING |
| PERVACIO022P | 62/848,053 | SELF-SERVICE COSMETIC DEFECT CHECK | Provisional | Sanjay Kanodia | PENDING |

**Trademarks:**

**Copyrights:**

**Domain Names:**

| Domain Name | Service Provider Contact Details (and Account Number (if any) | Owner and Registrar or Administrative Contact of Record | Expiry Date of Domain |
|---|---|---|---|
| Pervacio.com | | | |
| | | | |

**Other Assets:**

Any claims for infringement in connection with the transferred Intellectual Property Rights.

Any post-Closing claims in connection with the Assumed Contracts.

All other assets, both tangible and intangible, necessary for operation of the business including but not limited to Debtor's books and records and the books and records of Debtor's subsidiaries to the extent in the possession, custody or control of Seller.

Stock in any subsidiary of Debtor, to the extent Buyer so designates in writing within 60 days following the Closing Date (or such later date as the parties hereto may agree in writing).

## Schedule 1.3
## Assumed Contracts

Until the date that is 16 days after the entry of the Sale Order or determination of the Cure Amount with respect to a specific contract, whichever is later, the following list of Assumed Contracts is subject to amendment by Buyer

All contracts between Pervacio or any of its subsidiaries, on the one hand, and any customers of Pervacio or any of its subsidiaries, on the other hand, including but not limited to contracts with Sprint, Bell Canada, Apple, Kingfisher, and Telefonica

All contracts with AWS, Ionos, and repositories of Pervacio Intellectual Property

219655959v4

1